The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan Chapman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. As of December 1993, plaintiff had been employed by defendant for approximately thirteen years. Her job involved three different tasks. She did the thread job, she worked at the concession stand at lunch and she received records. The thread job required her to order thread and stock it in bins when it arrived. The thread was shipped in boxes containing twenty-four cones, which were each approximately seven inches long. She would pick up four to five cones at a time and put them in the bins. She also had to use an air hose to blow off cones of thread, which had become dirty.
2. During the years that plaintiff performed the thread job, she developed weakness and pain in her hands. In 1993 her family doctor referred her to Dr. Hardy, a neurosurgeon, who ordered diagnostic tests to determine whether her symptoms were due to her hands or to a cervical disk problem, since she also had some neck pain. Dr. Hardy concluded that she had carpal tunnel syndrome and ultimately performed surgery to both of her hands to release the carpal tunnel. Defendant admitted liability for benefits under the Workers' Compensation Act for her condition and paid compensation to her for over twelve weeks pursuant to a Form 21 agreement, which was approved by the Industrial Commission.
3. Plaintiff returned to work following her operations on 20 June 1994. Her symptoms had improved from the surgery by that time but, after she resumed her work duties for a while, she began to develop increasing pain, particularly in her left hand. On 8 November 1994 she returned to Dr. Hardy who then gave her restrictions against heavy lifting, pushing or pulling. She continued to complain of aching in her wrist when he next saw her on 30 November so he ordered nerve conduction tests, but there was no evidence of recurrent carpal tunnel syndrome on the studies. Consequently, he gave her exercises to do with her hands.
4. Dr. Hardy next saw plaintiff on 22 February 1995. At that time she was complaining of swelling on the ulnar side of her hand in addition to her previous symptoms. The doctor was of the opinion that these symptoms were related to her occupational disease and that they were also due to excessive use of her hands at work. He strongly recommended that she do something less demanding and advised her to wear her wrist splints while working. He also advised her to see an orthopedic surgeon regarding the new symptoms. Consequently, defendant sent her to Dr. Crisp who examined her on 15 March 1995. She told him that she had had to start using scissors at work approximately six weeks earlier and that her symptoms had worsened at that time. Dr. Crisp did not find evidence of active carpal tunnel syndrome on examination but found her hands to be weak, so he ordered physical therapy.
5. Plaintiff then underwent physical therapy and her symptoms improved somewhat, at least initially. However, she continued to complain of persistent pain. Dr. Crisp discharged her from his care on 14 June 1995 and told her that she could continue to wear her wrist splints as Dr. Hardy had instructed her.
6. Plaintiff continued to work for defendant during this time. It appeared from her employment records that she lost time from work to attend physical therapy and doctor's appointments, but it was not clear from the evidence whether she suffered loss of earnings during that time or the extent of the loss. In September 1995, however, she was laid off along with approximately nineteen other employees because the company did not have sufficient work. Although defendant anticipated that more work would come in and the employees would be rehired, the additional work did not materialize, so plaintiff was out of work for at least six weeks. She then began working for another company which manufactured drop cords. The new job also involved use of her hands and the same symptoms which had bothered her while she worked for defendant continued to bother her there.
7. As of the date of hearing on 25 July 1996, plaintiff had not been back to Dr. Hardy and she had to take pain medicine in order to work. Consequently, on 13 November 1996 she returned to him for evaluation. He did not recommend further treatment at that time but gave her a permanent impairment rating. In his opinion, she had plateaued and there had not been any clinical progression of her condition.
8. Plaintiff reached maximum medical improvement with respect to her compensable occupational disease on 14 June 1995 when she was released by Dr. Crisp. Although she was out of work for at least six weeks after her layoff in September 1995, she received unemployment compensation during that time and she would, in any event, receive more compensation for her impairment rating than for loss of earning capacity during that time. She did not prove any loss of earnings after the end of her healing period otherwise.
9. As a result of this occupational disease, plaintiff sustained a fifteen percent permanent partial disability to each of her hands. (Dr. Hardy's opinion has been given three times the weight of Dr. Crisp's in reaching this rating.)
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Temporary total disability ends when a claimant reaches maximum medical improvement. Moretz v. Richards and Associates,Inc., 316 N.C. 539 (1986); Franklin v. Broyhill FurnitureIndustries, 123 N.C. App. 200 (1996).
2. Plaintiff may elect to receive compensation for her permanent impairment ratings or compensation for loss of earning capacity under G.S. § 97-30. It has been presumed that she would choose the greater recovery. Gupton v. Builders Transport,320 N.C. 38 (1987)
3. Plaintiff is entitled to compensation at the rate of $142.67 per week for thirty weeks for the fifteen percent permanent partial disability to her right hand she sustained as a result of this injury by accident. G.S. § 97-31 (12).
4. Plaintiff is entitled to compensation at the rate of $142.67 per week for thirty weeks for the fifteen percent permanent partial disability to her left hand she sustained as a result of this injury by accident. G.S. § 97-31 (12).
5. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. G.S. § 97-2(19); G.S. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 A W A R D
1. Defendants shall pay compensation to plaintiff at the rate of $142.67 per week for sixty weeks for her permanent partial disability. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
3. An attorney's fee in the amount of $2,140.05 is hereby approved for plaintiff's counsel, which fee shall be deducted from the aforesaid award and paid directly to Ms. Mills.
4. Defendants shall pay the costs.
This the ___ day of September 1998.
 S/ _______________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________________ CHRISTOPHER SCOTT COMMISSIONER
S/ ______________________ DIANNE C. SELLERS COMMISSIONER